**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

TERESA ROBERTS----------------------------------------------------------------PLAINTIFF

VS.                                                                                                          NO. 1:07cv304-M-D

THE LINCOLN NATIONAL LIFE
  INSURANCE COMPANY             -----------------------------------------------DEFENDANT

**MEMORANDUM BRIEF IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Comes now the Plaintiff, by and through her attorney, and submits this, her Memorandum Brief In Support Of Plaintiff's Motion For Summary Judgment filed in the above styled and numbered cause, and in support thereof would show as follows:

I.

BASIS FOR SUMMARY JUDGMENT

1. Summary Judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law. Federal Rule 56 of the Federal Rules of Civil Procedure. *Anderson v. Liberty Lobby*, 477 U. S. 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986); *Phillips v. OKC Corp.*, 812 F.2d 265 (5th Cir. 1987); *Putman v. Insurance Co. of North America*, 673 F.Supp.171 (N.D. Miss.1987). The moving party must demonstrate to the Court the basis on which it believes that summary judgment is justified. The nonmoving party must then show that a genuine issue of material fact arises as to that issue. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.29 265 (1986); *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291 (5th Cir. 1987), *Putnam v. Insurance Co. of North America*, 673 F.Supp.171 (N.D. Miss. 1987). An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a fact finder to find for that party." *Phillips*, 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." *Phillips*, 812 F. 2d at 272.

II.

INTRODUCTION

2. The Plaintiff was an employee of Blood Systems, Inc. The Plaintiff's employer established one or more employee welfare benefit plans, including a long-term disability benefit plan, and the Defendant, The Lincoln National Insurance Company, issued an insurance policy which, according to its written terms, funded certain disability benefits provided by that employer plan. (Page 2, Paragraph 2, of Defendant's Answer attached hereto as Exhibit "1".)

3. The Defendant has admitted that with respect to specific decisions and roles that Lincoln National undertook, it served as an ERISA fiduciary. It is also admitted that Lincoln National acted as the delegate of the Administrator, and on behalf of the Administrator with respect to the claims decisions at issue. (Page 2, Paragraph 2, of Defendant's Answer attached hereto as Exhibit "1".)

4. In 2005, the Plaintiff filed an application for long-term disability benefits pursuant to the insurance policy issued by the Defendant. By letter from the Defendant to the Plaintiff dated February 8, 2006, the Defendant denied Plaintiff's claim for Long-Term Disability. A copy of said letter dated February 8, 2006 is attached hereto as Exhibit "2."

5. The Plaintiff requested a review of the Defendant's decision denying her Long-Term Disability claim, and by letter from the Defendant to the Plaintiff dated June 15, 2006, the Defendant again denied Plaintiff's Long-Term Disability claim. A copy of said letter dated June 15, 2006, is attached hereto as Exhibit "3."

6. The Plaintiff requested a review of the Defendant's denial of her Long-Term Disability appeal, and by letter from the Defendant to the Plaintiff dated October 24, 2006, the Defendant again denied Plaintiff's Long-Term Disability claim. A copy of said letter dated October 24, 2006 is attached hereto as Exhibit "4."

7. On December 22, 2006, an Administrative Law Judge with the Social Security Administration rendered a decision finding the Plaintiff to be totally disabled and entitled to Social Security disability benefits as of September 22, 2005. A copy of said Social Security ALJ decision is attached hereto as Exhibit "7."

8. The Defendant has admitted that the Plaintiff has exhausted her administrative remedies in connection with her Long-Term Disability claim. (Page 3 Paragraph 3, of Defendant's Answer attached hereto as Exhibit "1".)

9. The Plaintiff then filed suit against the Defendant for specific performance of the Defendant's obligation under the terms of said insurance contract in the above styled and numbered cause.

10. Exhibits "2", "3" and "4" attached hereto bear the letterhead of Jefferson Pilot Financial. As everyone who watches SEC football on television knows, the name of Jefferson Pilot Financial has been changed to that of the Defendant, The Lincoln National Life Insurance Company.

III.

SUMMARY OF PLAINTIFF'S ARGUMENT

11. Plaintiff's Motion for Summary Judgment should be granted for the following reasons:

(A) The fact that the Defendant both determined whether the Plaintiff was eligible for benefits and would pay benefits out of its own pocket creates a conflict of interest, which must be weighed as a factor in determining whether there has been an abuse of discretion.

(B) A heightened standard of review should be applied to the determination of whether the benefits denial was an abuse of discretion in order to account for the Defendant's dual role as the delegate of the plan administrator and founder of the long-term disability insurance policy.

(C) The Defendant's decisions denying Plaintiff's Long-Term disability claim, Exhibits "2", "3", and "4" hereto, on their face mischaracterized and ignored the medical reports of Plaintiff's examining and treating physicians and ignored the medical evidence supporting Plaintiff's restrictions and limitations.

(D) The Defendant's decision in denying Plaintiff's Long-Term Disability claim was an abuse of discretion.

IV.

ARGUMENT AND AUTHORITIES

(A) *The fact that the Defendant both determined whether the Plaintiff was eligible for benefits and would pay benefits out of its own pocket creates a conflict of interest, which must be weighed as a factor in determining whether there has been an abuse of discretion.*

12. The Defendant has admitted in its Answer, Exhibit "1" hereto, Page 2, Paragraph 2, that it both determined whether that the Plaintiff was eligible for benefits and also would pay benefits out of its own pocket. This creates a conflict of interest, which must be weighed as a factor in determining whether there has been an abuse of discretion. In June, 2008, the United States Supreme Court decided the case of *Metropolitan Life Insurance Company, et al v. Wanda Glenn,* 128 S. Ct., 2343 171 L. Ed. 2d 299, 305-307, 309-311, 316-317 (2008.) The Supreme Court in this case held that:

> Often the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket. We here decide that this dual role creates a conflict of interest; that a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case. See *Firestone Tire & Rubber Co. v. Brunch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989).

13. The Court in *Metropolitan* went on to say, at page 307, that if "a benefit plan gives discretion to an administrator or fiduciary who is *operating under a conflict of interest*, that conflict must be weighed as a '*factor i*n determining whether there is an abuse of discretion.' " *Firestone, supra*, at 115, 2109 S. Ct. 948.

In *Metropolitan* the Court further stated, at page 307:

> The first question asks whether [3] the fact that a plan administrator both evaluates claims for benefits and pay benefits claims creates the kind of "conflict of interest" to which *Firestone's* fourth principle refers. In our view, it does.
>
> That answer is clear where it is the employer that both funds the plan and evaluates the claims.

At Page 309, the Court in *Metropolitan* stated that "ERISA imposes higher-than-marketplace quality standards on insurers."

The Court in *Metropolitan* Page 310 also stated:

> In principle, as we have said, conflicts are but one factor among many that a reviewing judge must take into account.

6

> We believe that *Firestone* means what the word "factor" implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one.

Finally, in *Metropolitan*, at Page 316 of the Opinion, Justices Scalia and Thomas actually agreed with a Plaintiff for a change, stating that:

> I agree with the Court that petitioner Metropolitan Life Insurance Company (hereinafter petitioner) has a conflict of interest. A third-party insurance company that administers an ERISA-governed disability plan and that pays for benefits out of its own coffers profits with each benefits claim in rejects.

14. The case of *Maclachlan v. ExxonMobil Corp.* 350 F. 3d 472, 478 (5th Cir. 2003), states that "where, however, an administrator's decision is tainted by conflict of interest, the court employs a 'sliding scale' to evaluating whether there was an abuse of discretion. This approach does not mark a change in the applicable standard, but only requires the court to reduce the amount of difference it provides to an administrator's decision."

*(B) A heightened standard of review should be applied to the determination of whether the benefits denial was an abuse of discretion in order to account for the Defendant's dual role as the delegate of the plan administrator and founder of the long-term disability insurance policy.*

15. The Defendant has admitted in its Answer, Exhibit "1" hereto, that it assumed the dual roles of making the plan decision in this case and also serving as an ERISA fiduciary, by which approved claims are paid out of its own pocket. The United States Supreme Court held in

*Metropolitan Life Insurance Company, at el v. Wanda Glenn*, 128 S. Ct., 2343 (2008) that this was a conflict of interest. In the case of *Baker v. Hartford Life And Accident Ins. Co.,* 371 F. Supp. 2d 1352 (M.D. Fla. 2005), the District Court ruled that a heightened arbitrary and capricious (now read abuse of discretion) standard of review should be applied to the denial of a claim for long-term disability benefits under ERISA-governed employee benefit plans, given that the insurer which acted as the claims administrator for the plan and determined whether to grant or deny benefits also insured the plan, and thus had an inherent conflict of interest in making eligibility determinations. In the case of *Sweeney v. Standard Ins. Co.,* 276 F. Supp. 2d 388 (E.D. Pa. 2003), the District Court ruled that a heightened standard of review would be applied to a determination of whether a benefits denial was arbitrary and capricious (now read abuse of discretion) in order to account for an insurer's dual role as plan administrator and founder of a long-term disability insurance policy, but that only a moderate intensity of scrutiny was necessary.

     *(C) The Defendant's decisions in denying Plaintiff's Long-Term disability claim was an abuse of discretion. Specifically, the Defendant's decisions in denying Plaintiff's Long-Term disability claim, Exhibits "2", "3", and "4" hereto, on their face mischaracterized and ignored the medical reports of Plaintiff's examining and treating physicians and ignored the medical evidence supporting Plaintiff's restrictions and limitations.*

16. The burden of proof/standard of review in this case is set out in the seminal ERISA case of *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). In case *sub judice*, it is apparent from Plaintiff's medical records summarized below, and the lack of contrary proof or medical records submitted by the Defendant, that there was an abuse of discretion by the Defendant in denying the Plaintiff's long-term disability benefits.

The Plaintiff's two primary treating physicians have been Dr. Norris V. Crump and Dr. Craig Clark. A copy of Dr. Crump's treatment records of the Plaintiff is attached hereto as Exhibit "5." A copy of Dr. Craig Clark's treatment records of the Plaintiff is attached hereto as Exhibit "6."

Beginning on September 22, 2005, Dr. Crump had diagnosed the Plaintiff with the following conditions:

> Acute Injury to Sciatic nerve
> Tenderness/Pain to SI joints bilaterally
> Exacerbation of Degenerative Arthritis                Exhibit "5," pages 1 - 4
> Lumbar Spine (see MRI Scan 2004)
> Exacerbation of Fibromyalgia
> Blood pressure elevation probably secondary to pain


> On September 27, 2005
>
> See previous note with additions:
> Fatigue/Decreased Sleep
> Reoccurrence of Severe pain with Activity            Exhibit "5," pages 5 - 7
> Exacerbation of Internal Shingles


> On October 3, 2005
>
> S/P Acute Injury to Sciatic Nerve
> Low Back Pain/Tenderness SI joints
> Exacerbation Internal Shingles/Stress Related        Exhibit "5," page 8
> Sleep Apnea/Mask Removal

9

On October 17, 2005

S/P Sciatic Nerve Injury with exacerbation of
    Pain secondary to increase activity
Exacerbation of Fibromyalgia                                    Exhibit "5," pages 21 - 22
    (generalized muscular pain)
Lumbar Disc Disease (MRI – disk bulging-bilateral
    Foraminal compromise)


October 20, 2005

See previous note                                                Exhibit "5," pages 24 - 25


December 2, 2005

S/P Sciatic Nerve Injury
Lumbar Disc Disease  S/P Facet Injections              Exhibit "5," pages 28 - 29
Sacroilitis  S/P Injection
Fibromyalgia


December 12, 2005

Posterior Cervical Neck Pain/Headache? Etiolgy        Exhibit "5," page 32
Left Should Pain ? Etiology

December 16, 2005

Depression secondary to Health Condition
Fatigue secondary to combination of Pain/Sleep Apnea
Cervical/Lumbar Disc Disease (Disk protrusion
      Indenting Spinal cord)                                Exhibit "5," pages 35 - 37
Severe Headaches and Left shoulder probably secondary
      To Cervical Disk Disease
Exacerbation of Fibromyalgia & Internal Shingles

December 23, 2005

    See previous note                                                                     Exhibit "5," pages 48 – 49

RECOMMENDATION:
Stop ALL activity that causes pain; just rest
    (Hopefully less pain medication will be needed)
Notify Dr. Ungo (removing C-pap mask)
Consult/Depression (if no improvement)
Continue PT and Start Cervical Traction as instructed
Appt. Dr. Rice 01/04/06 (Left Shoulder)
Appt. Dr. Laura Gray 01/11/06
Follow-up 01/11/06


January 20, 2006

Headaches/Muscle Spasms/Radiculopathy
      Secondary to HNP
Fibromyalgia
Sleep Apnea
Depression                                                                  Exhibit "5," pages 54 - 55
Degenerative Lumbar Disk Disease
    SI joints/Greater Trochanterics Tenderness
Hypertension
Hypercholesterol


January 26, 2006

Headaches/ Muscle Spasms/Radiculopathy
      Secondary to HNP
Fibromyalgia
Sleep Apnea/ C-pap
Depression
Degenerative Lumbar Disk Disease                      Exhibit "5," pages 56 - 57
      SI joints
S/p Bilateral Injections Greater, Trochaneric Joints
Hypertension
Hypercholesterol

11

RECOMMENDATIONS:

Avoid activity that cause pain (see above)
    (Advise to seek Disability rather than surgery)
Soft/Collar/Neck Support
Physical Therapy
Use Traction Unit/Muscle Stimulation/per instructions
D/C Naproxen Mobic 15 mg daily


February 16, 2006

| | |
|---|---|
| Exacerbation Cervical HNP pain/symptoms | |
| Exacerbation of Fibromyalgia triggered | Exhibit "5," pages 58 -59 |
| By Dick Disease | |


March 22, 2006

| | |
|---|---|
| Chronic Pain Syndrome secondary to Cervical and Lumbar Disk Disease | |
| Exacerbation of Internal Shingles secondary To chronic pain | |
| Exacerbation of Fibromyalgia secondary to Disk Disease and Falls | Exhibit "5," pages 60 - 61 |
| Depression secondary to chronic pain | |
| Blood Pressure/Pulse elevations secondary to pain | |


March 29, 2006

See previous note                                                      Exhibit "5," page 62


April 5, 2006

| | |
|---|---|
| Major Depression secondary to chronic pain From Cervical HNP, Lumbar Disk Disease and Fibromyalgia (Strongly suggest counseling has not agreed to referral) | |
| Insomonia secondary to pain/sleep apnea | Exhibit "5," page 63 |
| Exacerbation of Internal Shingles pain secondary to stress | |
| Weight fluctuation secondary to decreased appetite secondary to depression | |

12

April 26, 2006

Rule out Stress Fracture (femoral)
Probable reoccurrence of trochanterics          Exhibit "5," page 64
       bursitis bilateral
See assessment not 04/05/06


May 17, 2006

Exacerbation of generalized pain (cervical/lumbar)
       secondary to exercises
B/P and Pulse Elevations secondary to Pain
       (Patient advised to monitor B/P with
         increased pain. B/P 180/100 in          Exhibit "5," page 66
         Dr. Gray's office on 12/15/05 and
         130/102 on 11/14/05. B/P has also
         Been elevated in this office on several visits due to pain


August 25, 2006

Fatigueness (Mother died one month ago)
Chronic pain secondary to C5-6 and L4-5
Fibromyalgia exacerbated by increased stress &
       C5-6, L4-5 Disk Disease          Exhibit "5," page 67
Depression secondary to chronic illness/multiple losses
Internal Shingles (Flares)


September 22, 2006

Probable Panic Attacks )Mother died recently & not
       Taking Effector and Ambien as prescribed.
Increased Stress and fatigued          Exhibit "5," page 68
Chronic pain secondary to C5-6 and L4-5
Fibromyalgia exacerbated by increased stress & C5-6, L4-5
Depression secondary to chronic illness/multiple losses

October 20, 2006

| | |
|---|---|
| Chronic pain secondary to C5-6 and L4-5 | |
| Fibromyalgia exacerbated by C5-6, L4-5 | |
| Depression secondary to chronic illness/multiple losses | Exhibit "5," page 69 |
| Sleep Apnea/Insomnia | |
| Exacerbation of Internal Shingles secondary to stress | |
| Panic Attacks resolved for now | |

May 4, 2007

| | |
|---|---|
| Chronic pain secondary to C5-C6 and L4-L5 Disk Disease | |
| Chronic Fibromyalgia Syndrome exacerbated by Disk Disease | |
| Depression secondary to chronic medical illness | Exhibit "5," page 70 |
| Sleep Apnea/Insomnia (Insomnia secondary to chronic pain) | |
| Exacerbations of Internal Shingles secondary to stress and chronic pain | |
| Essential Hypertension (pain increased blood pressure) | |

17. Beginning on January 25, 2006, Dr. Craig Clark diagnosed the Plaintiff with the following conditions:

January 25, 2006

| | |
|---|---|
| HNP C5-C6 | |
| Left C6 radiculopathy | |
| Degenerative disk disease L3-L4 and L4-L5 | Exhibit "6," pages 1 - 3 |
| Trochanteric bursitis bilateral | |

January 29, 2006

| | |
|---|---|
| HNP C5-C6 | |
| Left C6 radiculopathy | |
| Degenerative disk disease L3-L4 and L4-L5 | Exhibit "6," pages 6 - 8 |
| Trochanteric bursitis bilateral | |

14

February 15, 2006

HNP C5-C6
Left C6 radiculopathy                                                    Exhibit "6," pages 4 - 5
Fibromyalgia


February 15, 2006

HNP C5-C6
Left C6 radiculopathy                                                    Exhibit "6," pages 12 - 13
Fibromyalgia


February 27, 2006

HNP C5-C6
Left C6 radiculopathy                                                    Exhibit "6," pages 10 - 11
Fibromyalgia


18.  Dr. Craig Clark's office notes concerning the Plaintiff's visit of February 15, 2006 is very significant (Exhibit "6", pages 4).  On February 8, 2006 the Defendant mailed the Plaintiff a letter denying her disability claim.  According to Dr. Clark's notes, the Plaintiff reported to him that her insurance carrier said there was "nothing wrong with her to keep her from working."  Dr. Clark states in his office notes in response to this comment by the Plaintiff as follows:

> She is having difficulty with her insurance carrier and says today
> they are telling her my notes indicate "there's nothing wrong that
> would keep her from working."  This assertion is clearly not in my
> notes which indicate the HNP at C5-6 and left C6 radiculopathy
> which would profoundly affect her ability to work based on pain
> alone, much less the weakness in the left upper extremity.  We will
> await her decision regarding how she desires to proceed.

15

19. The initial and appellate denials of Plaintiff's long-term disability claim by the Defendant, Exhibits "2", "3" and "4" hereto, make passing reference to Dr. Norris Crump's extensive findings as to the Plaintiff's disability conditions. These findings by Dr. Crump in his numerous reports are supported by clinical findings, as set out in his reports, notes and correspondence.

20. The Defendant's denials of Plaintiff's claim dated June 15, 2006 and October 24, 2006 make reference to Dr. Clark's treatment and findings. Dr. Clark's response to the Defendant's interpretation of his medical reports is forcefully and clearly set out in Paragraph 18 above, when he stated that, in the Plaintiff's words, the Defendant stated that "there's nothing that would keep her from working; that this assertion is clearly not in my notes and her condition would profoundly affect her ability to work on pain alone, much less the weakness in the upper left extremity." These clarifying notes by Dr. Clark clearly illustrate the mischaracterization by the Defendant of his record findings as to the Plaintiff's disabling conditions. The Defendant places undue emphasis in making its final decision denying Plaintiff's long-term disability claim by letter dated October 24, 2006, Exhibit "4" hereto, upon the review by an "independent physician," Ernest P. Chiodo, M.D. it is very significant that Dr. Chiodo only supposedly reviewed the Plaintiff's medical records. He at no time examined her in person.

21. In the case of *Donaho v. FMC Corp.*, 74 F.3d, 894, 901 (8th Cir. 1996), the Court reversed the denial of benefits in an ERISA case as an abuse of discretion. In *Donaho*, the Plaintiff supported her claim with reports of her three examining and treating physicians. The employer relied on a review by an non-examining physician in denying the ERISA claim. The

Court held that an opinion of a reviewing physician is generally accorded less deference than that of a treating physician in reviewing cases under ERISA. The Court further held that when a reviewing physician's conclusions are contradicted by an examining physician and two treating physicians, reliance on the reviewing physician's conclusions "seems especially misplaced" and constitutes an abuse of discretion.

22. In the case *sub judice*, Dr. Norris and Dr. Crump have determined that the Plaintiff has been disabled since the time of her reported injury, and these physicians have supported their conclusions by objective medical evidence. In denying Plaintiff's claim, the Defendant supports this denial only by the review of Plaintiff's medical records by a non-examining physician. This is clearly an abuse of discretion and warrants reversal of the Defendant's denial of the Plaintiff's long-term disability claim and a Judgment of this Court awarding her a long-term disability benefits.

23. In the case of *Moore v. Harris Corp.*, 813 F. Supp 1556, 1559-1560 (M.D. Fla. 1993) the District Court reversed the plan administrator and awarded the Plaintiff disability benefits. In *Moore*, the Court ruled that the administrator abused its discretion by not evaluating the Plaintiff's mental and physical conditions as a whole. The administrator in this case evaluated each factor separately. So in the case *sub judice*, the Defendant's decisions, Exhibits "2", "3" and "4" hereto, reflect that the Plaintiff's mental and physical conditions were evaluated separately, and not as a whole. If they had been evaluated together, she would have been found to have disabled under the "any occupation definition."

*(D) The Defendant did not consider the decision by the Social Security Administrative Law Judge dated December 22, 2006 finding the Plaintiff to be totally disabled as of December 22, 2005. This ALJ decision was rendered after the time of the Defendant's denial of Plaintiff's final administrative appeal dated October 24, 2006. This Court should either (1) consider the Social Security ALJ decision in determining whether there has been an abuse of discretion in denying Plaintiff's claim, or (2) remand the case to the Defendant for consideration of the Social Security Administrative Law Judge decision.*

24. On December 22, 2006, an Administrative Law Judge with the Social Security Administration entered a decision finding the Plaintiff to be totally disabled and entitled to Social Security disability benefits as of September 22, 2005. A copy of said Social Security ALJ decision is attached hereto as Exhibit "7." This ALJ decision was rendered after the time of the Defendant's denial of the Plaintiff's final administrative appeal dated October 24, 2006. In applying a deferential standard of review, it may be appropriate for a District Court to remand a dispute to the plan level for consideration of evidence that was not previously considered, such as the Social Security ALJ decision in this case. In the case of *Wolfe v. J.C. Penney Co.*, 710 F.2d 388 (7th Cir. 1983) the case was remanded to allow new evidence to be considered at the plan level.

## CONCLUSION

25. For the reasons set out above, this Court should enter a Judgment awarding the Plaintiff her long-term disability benefits, or remanding the case to the Defendant for consideration of the Social Security Administrative Law Judge decision.

        Respectfully submitted,

        s/ Carter Dobbs, Jr.
        _____
        ATTORNEY FOR THE PLAINTIFF

CARTER DOBBS, JR.
ATTORNEY FOR THE PLAINTIFF
MISSISSIPPI BAR NO. 6137
103 2ND AVENUE NORTH
POST OFFICE BOX 517
AMORY, MISSISSIPPI 38821

TEL: (662) 256-5697
FAX: (662) 256-1483
E-MAIL: carterdobbslaw@gmail.com

08.1601.mbw

**CERTIFICATE OF SERVICE**

I, Carter Dobbs, Jr., attorney for the Plaintiff, do hereby certify that I have, on this the 19th day of December, 2008, electronically filed, a true and correct copy of the above and foregoing Memorandum Brief In Support Of Plaintiff's Motion For Summary Judgment with the Clerk of the Court using the ECF system and mailed by United States Postal Service to Honorable William F. Ray, attorney for the Defendant The Lincoln National Life Insurance Company, at his usual mailing address of Watkins & Eager, Post Office Box 650, Jackson, Mississippi 39205-0650.

s/ Carter Dobbs, Jr.
_____
CARTER DOBBS, JR.
