# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

TERESA ROBERTS                                                                PLAINTIFF

V.                                                          CASE NO. 1:07CV304

UNITED BLOOD SERVICES OF MISSISSIPPI
THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY                                       DEFENDANTS

## MEMORANDUM OPINION

This cause comes before the court on the motions [25, 27] of the plaintiff, Teresa Roberts, and the defendant, The Lincoln National Insurance Company ("Lincoln National") for summary judgment.

Roberts' employer, United Blood Services of Mississippi, established an employee welfare benefit plan, including a long-term disability plan. Lincoln National[1] issued an insurance policy which funded the benefits of the employer's plan. Roberts is a Registered Nurse who was working as a Human Resource Generalist. She enrolled in the plan becoming eligible for benefits.

Roberts, alleging she suffered from fibromyalgia, sleep apnea, cervical and lumbar pains, depression, and other ailments, made a claim for long-term disability benefits under the plan. Lincoln National denied that claim on February 8, 2006. Roberts requested review of that decision. Lincoln National reviewed the decision and again denied coverage on June 15, 2006. A second review was later conducted and Roberts' claim was denied for a third time on October

---

[1] The policy was actually issued by Jefferson Pilot Financial, but as Plaintiff's counsel adroitly points out everyone who watches Southeastern Conference Football knows Jefferson Pilot Financial is now Lincoln National. Counsel is commended for his perspicacity.

24, 2006. On December 22, 2006 an Administrative Law Judge found Roberts to be totally disabled. This finding had no effect on her long-term disability plan, but did entitle her to Social Security disability benefits.

Roberts claims her disability began on September 20, 2005, when she slipped and tried to brace herself while traversing a set of stairs. Two days after the slip and fall she sought medical attention complaining of lower back, buttock, hip joint, and SI joint pain. Her physician, Dr. Crump, concluded she had injured her sciatic nerve, had exacerbated arthritis in her lumbar region, had exacerbated her fibromyaligia, and had blood pressure elevation probably secondary to pain.

During the next month Dr. Crump diagnosed Roberts with additional problems including fatigue, decreased sleep, exacerbation of internal shingles, sleep apnea,[2] lumbar disc disease and others. In the following months Dr. Crump's notes mention other issues such as neck pain, headaches, depression,[3] left shoulder pain, hypertension, hypercholesterol, muscle spasms, elevated pulse, insomnia, weight fluctuation, trochanterics bursitis bilateral, and panic attacks.

Roberts saw numerous physicians in the year following her slip. A Dr. Ginspun reported in October of 2005 that while Roberts complained of pain a physical exam showed her hip to be normal. He did note some tenderness in the region near her SI joint. In November 2005, a neurosurgeon, Dr. Bobo, noted that Roberts complained of significant pain. However, his objective opinion was that she suffered from "musculoskeletal back and leg pain without radiculopathy which will heal with time." He also found evidence of a sciatic nerve injury for

---

[2] Medical records indicate Roberts was being treated for sleep apnea at least as early as January 13, 2005.

[3] The diagnosis of depression is not supported by a mental health expert. Counseling notes from Roberts' three sessions are sparse indicating she may suffer from some disorder, but has failed to seek treatment.

which he prescribed oral medicines and directed Roberts to walk with a cane. A Dr. Rice examined Roberts' shoulder and found "she has mild pain . . . but no restriction of motion." He stated she should continue physical therapy, but no other treatment was needed.

Dr. Clark examined Roberts finding she had a bulging disc, but noting she was "in no apparent distress." His notes from January 25, 2006 indicate Roberts "is a pleasant, 46 year old female in no apparent distress who looks her given age, is well-developed and nourished with good attention to hygiene and body habit[]s."

On January 26, 2006, Registered Nurse Toni Janecek, reviewed Roberts' medical file and found it did not support work restrictions in regard to sedentary positions. Having received new medical files Lincoln National once again asked Janecek to review Roberts' condition. On February 7, 2006, Janecek reported that Roberts "may have some limitations from overhead lifting or repetitive overhead work." She, however, did not see the need for extensive limitations. This is consistent with the opinion of Lincoln National's consulting physician, Dr. Chiodo, who found the only limitations to be for Roberts to refrain from frequent overhead lifting or frequent twisting of the neck.

On December 2, 2005, Dr. Crump released Roberts to work four hours a day. Roberts returned to work from December 5, 2005 to December 13, 2005 on a part-time basis. She did not return to work after December 13. On December 19, 2005 Dr. Bobo's notes indicate Roberts needed medications and time to heal, but no work restrictions were warranted. On December 23, 2005 Dr. Crump recommended Roberts stop all activity that causes pain and that she "just rest."

All parties agree the benefit plan at issue is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. ERISA requires specific administrative remedies be sought and preempts all other causes of action related to ERISA plans. *See Metropolitan Life*

*Ins. Co. v. Taylor*, 481 U.S. 58 (1987). Roberts has exhausted her administrative remedies, and Lincoln National is an ERISA fiduciary. As such this appeal of Lincoln National's decision is proper. Having finished the discovery process in this matter both parties seek summary judgment.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S.Ct. at 2110.

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (citing 29 U.S.C. § 1001 *et seq*.). In deciding these cases, the Supreme Court has laid out four principles of review. *Id*. at 2347. First "a court should be 'guided by principles of trust law' . . . and it should consider a benefit determination to be a fiduciary act." *Id*. (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111-113 (1989)). Secondly, "[p]rinciples of trust law require courts to review a denial of plan benefits 'under a *de novo* standard' unless the plan provides to the contrary." *Id*. at 2348 (quoting *Firestone*, 489 U.S. at 115). Third, "[w]here the plan

provides to the contrary by granting 'the administrator or fiduciary discretionary authority to determine eligibility for benefits' . . . '[t]rust principles make a deferential standard of review appropriate.'" *Id*. (quoting *Firestone*, 489 U.S. at 115, 111). Finally, if "a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Id*. (quoting *Firestone*, 489 U.S. at 115).

Both parties agree Lincoln National has discretion to determine when a person is disabled within the meaning of the plan. When plans give discretion to fiduciaries, the Fifth Circuit uses a two-step analysis to determine whether the fiduciary abused its discretion. *Plyant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 540 (5th Cir. 2007). First a court must determine whether the interpretation is "legally correct." *Id*. If so, there is no abuse of discretion and the inquiry ends. *Id*. However, if the interpretation is not legally correct, a court must consider whether the fiduciary's interpretation constitutes an abuse of discretion. *Id*.; *see also High v. E-Systems Inc.*, 459 F.3d 573, 577 n.2 (5th Cir. 2006).

"Under the abuse of discretion standard, '[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail.'" *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 397-98 (5th Cir. 2007) (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)). "Substantial evidence" does not have to rise to the level of a preponderance of the evidence, but must be such that "a reasonable mind might accept [it] as adequate to support a conclusion." *Id*. at 398 (quoting *Ellis*, 394 F.3d at 273). "'An arbitrary decision is one made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Id*. (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996)).

Additionally, all factual determinations are reviewed under the abuse of discretion standard. *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 597-98 (5th Cir. 1994); *Pierre v. Connectuicut General Life Ins. Co.*, 932 F.2d 1552 (5th Cir. 1991). In this context, the abuse of discretion standard is satisfied when there is "concrete evidence" to support the plan administrator's decision or there is a "rational connection" between the evidence in the record and the final decision. *Vega v. National Life Ins. Co.*, 188 F.3d 287 (5th Cir. 1999) (en banc).

It takes little analysis to determine that for the purposes of summary judgment the judgment of Lincoln National was not legally correct. The evidence taken in the light most favorable to Roberts creates a question as to whether she was so limited as to be disabled. The laundry list of ailments noted by Dr. Crump, along with his recommended restrictions, are ample evidence to support a finding of disability for the purposes of summary judgment.

The court next considers the more complex question of whether it was an abuse of discretion to find Roberts not disabled.

First the court addresses the abuse of discretion standard it will apply and the evidence it will consider. Roberts argues the court should apply a heightened abuse of discretion standard because Lincoln National had a conflict of interest while acting as both the insurer and the fiduciary under the plan. Lincoln National did in fact have a conflict of interest when it acted. The law is clear on how this conflict should be handled. The Supreme Court has stated such a conflict is a factor to be weighed in determining whether there was an abuse of discretion. *Metropolitan Life Ins. Co.*, 128 S.Ct. at 2350 (citing *Firestone*, 489 U.S. at 115). That court specifically stated "[w]e do not believe that *Firestone's* statement implies a change in the

*standard of review*."[4]  *Id.*; *see also* Restatement (Second) of Trusts § 187.  Therefore this court will not adopt a more stringent standard, but will consider the conflict of interest as a factor in its determination of Lincoln National's decision.

The conflict of interest weighs against the reasonableness of Lincoln National's decision.  However, its weight is minimal.  The record indicates that Lincoln National undertook a significant investigation into Roberts' disability.  Further, the record shows Lincoln National was initially inclined to grant benefits to Roberts.  That decision changed, but only after additional evidence, as discussed below, surfaced.

Roberts also asks the court to consider evidence outside the administrative record including the decision of the Social Security Administration.  A court may not consider evidence outside the administrative record.  *Vega*, 188 F.3d at 300.  Also, the administrative record cannot be supplemented after suit is filed.  *Id.*  Finally, a court may not consider whether the Social Security Administration considers the claimant to be disabled, as the Administration is governed by different rules than ERISA review of private plans.  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832-33 (2003).

Based on the evidence in the administrative record Lincoln National did not abuse its discretion by discounting the wide array of restrictions imposed by Dr. Crump.  His findings were contradicted in the record by the findings of Lincoln National's reviewing doctor and registered nurse.  Additionally, they were inconsistent with the numerous references in Roberts'

---

[4] The Fifth Circuit in *Corry* did apply a sliding scale standard of review because of a conflict of interest.  499 F.3d at 398.  However, that decision was handed down before the Supreme Court clarified that a conflict of interest did not change the standard of review.  This conflict appears to be little more than a semantic difference based on the Fifth Circuit application of its sliding scale.  For instance in *Corry* the Fifth Circuit's sliding scale only entitled the claimant to a "modicum less deference" than the general abuse of discretion standard.  *Id.* (citing *Vega*, 188 F.3d at 301; Lain v. UNUM Life Ins. Co. of Am., 279 F.3d 337, 343 (5th Cir. 2002)).  This court is of course bound to apply the test as laid out by the Supreme Court.  However, both tests almost certainly would reach the same conclusion in every application.

medical files showing complaints of severe pain where only mild objective problems existed.

Roberts argues Lincoln National was required to accept her treating physician's opinion with greater deference than reviewing physicians. This is not the case. The Fifth Circuit has

> emphasized that an administrator does not abuse its discretion by relying on the medical opinions of its consulting physicians instead of the medical opinions of a claimant's treating physicians.

*Corry*, 499 F.3d at 402 (citing *Gothard v. Metropolitan Life Ins. Co.*, 491 F.3d 246, 249-250 (5th Cir. 2007); *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 233 (5th Cir. 2004); *Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 335 n.9 (5th Cir. 2001); *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999); *Sweatman*, 39 F.3d at 597).

The reasons administrators are allowed to weigh medical opinions is illustrated by this case. It is obvious how a plan administrator could come to view Roberts as believing her suffering was much greater than her objective injury. The record shows a patient taking eight types of medicine before her fall. Following the fall she goes through numerous doctors. Each time she complains of severe pain and ever changing symptoms. However, each doctor, other than Dr. Crump, objectively found mild to moderate problems. The treatment recommended by these physicians is always conservative. Dr. Crump puts forth that Roberts should be restricted from basically every activity. Other doctors disagreed and there is good reason to accept their analysis.

This analysis corresponds closely with the June 1, 2006 report generated by Lincoln National which states,

> [t]his is a complicated claim as it does not appear [Roberts'] complaints are consistent. There do[] not appear to be objective findings that support [restrictions and limitations] from a sedentary work capacity.

Roberts' differing symptoms are contrasted by Dr. Crump's finding that she suffered from

panic attacks whereas Dr. Clark specifically found that Roberts did not suffer from panic attacks. Likewise there is strong evidence her subjective complaints do not match objective findings.

In a January 29, 2006 letter, Dr. Clark writes to Dr. Crump that after returning to work Roberts

> not[ed] severe pain 'all the way through' her chest and Intrascapular region. These pains were so severe they would 'eat her up.' She had a cervical MRI and saw Dr. Bobo. He recommended cervical traction and told her to return in three months. She noted no relief . . . and says she could not wait the three months.

The letter goes on to state no major objective findings. Dr. Clark recommends the same conservative treatment offered by Dr. Bobo even in light of Roberts' strong complaints.

However, the doctors' findings do show the need for some restrictions. There is a general consensus that Roberts could only work a sedentary job. Furthermore all the medical evidence indicates that Roberts could do no overhead lifting.

The question before the court is whether these limited restrictions prevented Roberts from continuing in her regular occupation. The policy in question defines "regular occupation as

> the occupation, trade or profession:
>
> 1. in which the Insured Employee was employed with the Employer prior to Disability; and
>
> 2. which was his or her primary source of earned income prior to Disability.
>
> It includes any work in the same occupation for pay or profit; whether such work is with the Employer, with some other firm or on a self-employed basis. It includes the main duties of that occupation as performed in the national workforce; not as performed for a certain firm or at a certain work site.

A Job Analysis Form on Roberts' position indicates her job can be performed by

alternatively sitting and standing, that accomodations can be made to work with a disability, and that technology solutions may be possible so an employee with restrictions may be able to work. However, the form also indicates Roberts must occasionally reach or work overhead.

Lincoln National determined this position was most closely associated with a sedentary position. Its denial of claim report of February 7, 2006 states,

> nurse indicate[s] that [Roberts] may have limitations from overhead lifting due to some cervical bulge at C6, however, although . . . [job analysis] indicate[s] 'occasional' reaching and working overhead . . ., overhead lifting is not a requirement for a sedentary occupation and policy insures occupation.

Roberts addresses whether the factual determination that she does not have to work overhead is an abuse of discretion. Lincoln National does not address this question.

The court can not grant summary judgment to either party without determining this issue. Additional briefing on this limited point is required in order to resolve the question before the court. The court will deny both parties' motions for summary judgment. Roberts and Lincoln National shall have fifteen days from entry of this order to brief whether Roberts' position as performed in the national economy requires overhead work. The court will allow the parties a reasonable time to file responsive briefs.

The motions for summary judgment of both parties are DENIED.

This the 17th day of September, 2009.

                                                  **/s/ MICHAEL P. MILLS**
                                                  **CHIEF JUDGE**
                                                  **UNITED STATES DISTRICT COURT**
                                                  **NORTHERN DISTRICT OF MISSISSIPPI**